| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| | | COUNTY |
|---|---|---|
| **PLAINTIFF(S):** Tamar Hod | | Suffolk |
| ADDRESS: 7 Noah Street, Tel Aviv, 6905023 | | |
| | **DEFENDANT(S):** | Brigham and Women's Hospital, Inc.; Massachusetts General Hospital; |
| | | Partners Healthcare System, Inc.; and Joseph Bonventre, M.D., individually. |
| **ATTORNEY:** Colin Hagan | | |
| ADDRESS: Shlansky Law Group, LLP | ADDRESS: | Brigham and Women's Hospital, Inc., 75 Francis St., Boston, MA 02115 |
| 1 Winnisimmet Street | Massachusetts General Hospital, 55 Fruit Street, Boston, MA 02114. | |
| Chelsea, MA 02150 | Partners Healthcare System, Inc., 800 Boylston Street, Suite 1150, Boston, MA 02199 | |
| BBO: #684798 | Joseph Bonventre, M.D., 213 Harvard St, Apt 2R, Cambridge, MA 02139. | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES   ☐ NO |

**\*If "Other" please describe:**

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses .................................................................................................. $ _____
    2. Total doctor expenses .................................................................................................... $ _____
    3. Total chiropractic expenses ........................................................................................... $ _____
    4. Total physical therapy expenses .................................................................................... $ _____
    5. Total other expenses (describe below) .......................................................................... $ _____
                         Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................................................... $ _____
C. Documented property damages to dated ............................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ............................................. $ _____
E. Reasonably anticipated lost wages ...................................................................................... $ _____
F. Other documented items of damages (describe below) ......................................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Plaintiff retaliated against, which lead to termination that has prevented Plaintiff from being able to find comparable work.

                              TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
  Defendants' breached Plaintiff's 4-year employment contract without cause, which has prevented Plaintiff from being able

to find comparable work in the medical field.

TOTAL: $ 134,320.00 +

**Signature of Attorney/Pro Se Plaintiff: X** _(signature)_      **Date:** Jan. 21, 2019

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** _(signature)_      **Date:** Jan 21, 2019

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c.231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party †

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical / Wrongful Death | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death, G.L. c.229 §2A | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 §28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c.249 §4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93 §9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93 §8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149 §§29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12 §11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123 §9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c.265 §56 | (X) |
| E95 Forfeiture, G.L. c.94C §47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A §12 | (X) |
| E14 SDP Petition, G.L. c. 123A §9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c.6 §178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112 §12S | (X) |

## TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES     ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                      SUPERIOR COURT DEPARTMENT
                                                  OF THE TRIAL COURT

TAMAR HOD,                              )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Case No.:_____
                                       )
BRIGHAM and WOMEN'S HOSPITAL, INC.;    )        **DEMAND FOR JURY TRIAL**
MASSACHUSETTS GENERAL                  )
HOSPITAL; PARTNERS HEALTHCARE          )
SYSTEM, INC.; JOSEPH BONVENTRE,        )
M.D.; Individually,                    )
                                       )
            Defendants.                )

## <u>COMPLAINT</u>

        Plaintiff Tamar Hod, M.D. ("Dr. Hod" or "Plaintiff"), alleges for her Complaint against

Defendants Brigham and Women's Hospital, Inc. ("BWH"); Massachusetts General Hospital

("MGH"); Partners Healthcare System, Inc. ("Partners Healthcare") (together with BWH and

MGH, "Partners"); Joseph Bonventre, M.D. ("Dr. Bonventre") (collectively, "Defendants"),

upon personal knowledge with respect to her and her own acts, upon information and belief as to

all other matters, and with a belief that all matters alleged herein are likely to have evidentiary

support after a reasonable opportunity for further investigation and discovery, states as follows:

## <u>INTRODUCTION</u>

        1.      Dr. Hod was born in Israel on August 13, 1971.  She has over twenty years of

experience as a medical doctor and a scientist, focusing her research and work on Nephrology.[1]

---

[1] Nephrology is a branch of medicine concerned with the kidneys.

2.      She emigrated from Israel to the United States to continue her research and work in 2010.  Dr. Hod worked as a research fellow at Beth Israel Deaconess Medical Center from 2010-2013, and she was thereafter recruited by BWH for a transplant Nephrology fellowship for the academic year 2013-2014.

3.      After completing a transplant Nephrology fellowship at BWH in 2014, she returned to Israel temporarily, until she entered into a contract with BWH, MGH and Partners, providing for a four-year position in the Joint Nephrology Fellowship Program at BWH and MGH.  Upon information and belief, Partners Healthcare is a party-in-interest to the contract with Dr. Hod.

4.      At the outset of her employment, Partners, including Dr. Bonventre purported to impose additional conditions on Dr. Hod's employment that were wholly absent from the parties' contract, including by seeking to have Dr. Hod fund her own fellowship by way of a "donation" to BWH.

5.      No other fellow in the program was asked to provide such self-funding.

6.      Dr. Hod refused to provide the "donation" to BWH because the rules applicable to Dr. Hod's immigration status and her immigration situation prohibited such self-funding and because it was not mentioned or agreed at the outset and was adverse to Dr. Hod's dignity as a professional.

7.      This refusal was not received well by Partners, including Dr. Bonventre, Chief of BWH's Renal Division.

8.      Dr. Bonventre was personally dismayed that Dr. Hod refused to fund her own position, which resulted in a series of retaliatory acts directed at Dr. Hod.

9.      Dr. Hod performed exceptionally during her first two years of employment, and she received broad praise from physicians at BWH and MGH.  Among other things, she was described as "essential" to the program.

10.      Nonetheless, within a few months of praising Dr. Hod and recognizing her as "one of the few people in the USA with expertise in . . . optimization of use of immunosuppressive therapy," Dr. Bonventre began to cite a pattern of alleged "issues" with Dr. Hod's performance.

11.      These supposed performance issues were not raised in Dr. Hod's evaluations, nor are they in her statutorily-maintained employment file.  Instead, they were only raised in response to Dr. Hod voicing concerns about the legality of the sought-after funding and her refusal to leave her position voluntarily despite Partners' attempts to require her to leave the program if she would not provide the sought-after funding.

12.      Despite these conjured "performance issues," Dr. Hod continued to be praised by other physicians, including by being recognized as a "stellar fellow" in June of 2017.

13.      Nonetheless, Partners terminated Dr. Hod's employment in August 2017 on the supposed basis that she had had "bad interactions" and alleged performance "issues."

14.      Partners has discriminated and retaliated against Dr. Hod based on her national origin and immigration status, and their acts and omission have tarnished Dr. Hod's reputation and interfered with her career, preventing her from securing comparable employment in the United States.

15.      In August 2018, after being unable to obtain employment in the United States due to Partners' discrimination and retaliation, Dr. Hod relocated her entire family back to Israel in order to secure employment.

3

16.     Dr. Hod brings this Complaint to redress the harm caused by Partners'
discrimination and retaliatory conduct.

## PARTIES

17.     Plaintiff Tamar Hod, M.D., is a natural person who resides at 7 Noah Street, Tel
Aviv, 6905023.

18.     Defendant Brigham and Women's Hospital, Inc., is a hospital with a principal
place of business at 75 Francis Street, Boston, Massachusetts 02115.

19.     Defendant Massachusetts General Hospital is a hospital with a principal place of
business at 55 Fruit Street, Boston, Massachusetts 02114.

20.     Defendant Partners Healthcare System, Inc., is a nonprofit corporation with a
principal place of business at 800 Boylston Street, Suite 1150, Boston, Massachusetts 02199.

21.     Defendant Joseph Bonventre, M.D., 213 Harvard Street, Apt 2R, Cambridge,
Massachusetts 02139.

## JURISDICTION

22.     Jurisdiction is proper pursuant to M.G.L. c. 212, § 3 because all Defendants reside
in or maintain a principal place of business in Massachusetts.

23.      On or about June 11, 2018, Dr. Hod filed a claim with the Massachusetts
Commission Against Discrimination ("MCAD") and Equal Employment Opportunity
Commission.

24.     On or about October 4, 2018, Dr. Hod withdrew her administrative claims in
order to bring this action.

25.     Dr. Hod has exhausted all administrative remedies.

## FACTUAL BACKGROUND

*Dr. Hod Emigrates from Israel to the United States and Enters into a Contract with Partners*

26.     After completing her medical studies at the Sackler School of Medicine in Tel

Aviv, Israel, in 1996, Dr. Hod acquired extensive experience and knowledge in clinical

medicine.  Among other things, Dr. Hod served in the Israeli army as a physician and a Captain.

27.     She has completed a Residency in Internal Medicine and a Fellowship in

Nephrology at Meir Hospital, located in Kfar Saba, Israel, and served as an attending

Nephrologist.

28.     Dr. Hod emigrated from Israel to the United States in 2010 for a research

fellowship at Beth Israel Deaconess Medical Center.

29.     Dr. Hod was later recruited by BWH for a transplant fellowship for the 2013-2014

academic year.  Upon completing her fellowship, in 2014, Dr. Hod returned to Israel with her

husband and three children.

30.     On December 10, 2014, Dr. Hod's husband, who is a senior executive with

software technology companies, sent an e-mail to Anil Chandraker, M.D. ("Dr. Chandraker"),

Chair of the Transplant Nephrology Department at BWH, explaining that living in Israel had

made it difficult to manage his companies and that he was contemplating relocating to the United

States indefinitely with Dr. Hod and their children.  Dr. Hod's husband informed Dr.

Chandraker: "I must settle permanently in Boston but need to make sure Tammy gets to practice

in the US."

31.     On December 21, 2014, Dr. Chandraker sent an e-mail to Dr. Hod stating that he

spoke with Kevin Tucker, M.D. ("Dr. Tucker"), Program Director of the Joint Nephrology

Fellowship Program of BWH and MGH (the "Nephrology Fellowship"), and Dr. Bonventre,

Chief of BWH's Division of Renal Medicine.  Specifically, Dr. Chandraker told Dr. Hod that

Drs. Tucker and Bonventre were "both positive about [her] interest in the nephrology fellowship

position."

32.     On the following day, Dr. Tucker sent an e-mail to Dr. Hod requesting her

*curriculum vitae*, a personal statement, and three letters of recommendation, which Dr. Hod

provided.

33.     Partners offered Dr. Hod a position in the four-year Nephrology Fellowship by

way of an offer letter dated April 13, 2015, which Dr. Hod promptly accepted.  The offer letter is

attached hereto at <u>Exhibit A</u>.

*Partners Discriminates against Dr. Hod by Seeking to Impose Additional Conditions on Her Employment by Demanding a "Donation" to BWH.*

34.     Partners was obligated to find financial support for Dr. Hod's position, as with all

contractual commitments.  If Dr. Hod were to obtain her "Green Card" (indication of valid,

permanent United States residency), however, Partners could fund her position through a training

grant rather than its own resources.[2]

35.     As such, Dr. Hod retained Samia Chandraker, Esq. ("Attorney Chandraker"), an

immigration attorney and Dr. Chandraker's spouse, to assist her in obtaining a Green Card.

36.     It became evident that Dr. Hod would not have her Green Card prior to beginning

the Nephrology Fellowship.  Thus, Partners would need to fund the research year of Dr. Hod's

position without the benefit of the training grant, which would have otherwise been available.  In

other words, Partners was required to fund Dr. Hod's research from other resources.

---

[2] Notably, Dr. Hod was duly authorized to work in the United States pursuant to an Employment Authorization Document.

37.     Dr. Chandraker and Attorney Chandraker proposed that Dr. Hod's husband's company provide funding to BWH that would effectively subsidize the cost of Dr. Hod's research year.

38.     Upon information and belief, the idea that Dr. Hod would finance her own position was fully supported by Partners.

39.     No other fellow in the program was asked to provide self-funding.  Rather, other international medical graduates without a Green Card did receive funding from Partners. Partners targeted only Dr. Hod.

40.     Upon information and belief, the federal governmental rules applicable to Dr. Hod's immigration status, as well as certain aspects of Partners' own policies, disallow the subsidy of Dr. Hod's position.  Upon further information and belief, Partners knew that Dr. Hod's position could not be subsidized in light of her immigration status.

41.     Partners nevertheless persisted in seeking funding from Dr. Hod's husband's company, purporting to characterize the funding (clearly a *quid pro quo*) as a "donation" to BWH.

42.     Dr. Hod resisted the proposal, and she explained to Dr. Chandraker and Attorney Chandraker that Partners would need to fund her position.

43.     Dr. Chandraker told Dr. Hod's husband that a "donation" from his company was necessary, and that "there is no option" other than for Dr. Hod to provide her own funding, although he suggested other means by which Dr. Hod could seek her own funding.

44.     Relying on Dr. Chandraker's representations, Dr. Hod was willing to consider Partners' proposal.  However, Dr. Hod came to learn that it would not be possible to provide the

"donation," including because, upon information and belief, it is contrary to immigration laws and certain aspects of Partners' own policies.

45.     On April 13, 2015, Patricia Reaser, Administrative Director of BWH's Renal Division and Dr. Bonventre's personal assistant, wrote to Dr. Hod's husband: "I will need the funds by middle of June."

46.     Dr. Hod desired to stay in the Nephrology Fellowship, but she could not provide the self-funding "donation," which she had no obligation to do per her contract with BWH and MGH.

47.     Partners' own rules prohibit the funding of such a position in such a *quid pro quo* arrangement, which fact was duly disregarded by Partners.

48.     Neither Dr. Hod nor her husband provided the "donation."

*Dr. Hod's Performance Is Outstanding*

49.     On or around September 16, 2015, Dr. Tucker asked Dr. Hod to join the clinical year as two fellows dropped from the program.  Dr. Hod promptly agreed and joined on or around September 21, 2015, in order to help the program and to start the fellowship with the clinical year.

50.     During the second year of the fellowship Dr. Hod undertook two clinics per week, although other fellows had only one clinic per week.  Dr. Hod undertook the additional work, as necessary, to support her salary for the Nephrology Fellowship.

51.     Dr. Hod performed exceptionally in the Nephrology Fellowship for two years, and she received impressive performance reviews.

52.     She was repeatedly praised by Drs. Tucker, Bonventre, and Chandraker, among others.

53.    For example, on January 20, 2016, Dr. Hod moderated one of the lectures in the program.  Dr. Tucker told Dr. Hod: "You did a great job!  You were probably the most well prepared of any fellow I have ever asked to moderate one of these sessions."  In March 2016, Dr. Tucker acknowledged Dr. Hod again, telling her that her case presentation was "excellent."

54.    On March 8, 2016, Dr. Bonventre wrote to the United States Department of Health and Human Services in support of Dr. Hod's application for a certain waiver necessary to obtain her Green Card.  In the letter, Dr. Bonventre praised Dr. Hod and recognized her as "essential to our program."  Dr. Bonventre wrote: "***She is one of a few people in the USA with expertise in understanding the optimization of use of immunosuppressive therapy,*** an important field of public interest affecting more than 70,000 people."  (alteration in original).

55.    Dr. Bonventre also discussed Dr. Hod's "significant experience"; "exceedingly important" research; "important discoveries"; and explained that she "is amongst a handful of scientists internationally who are experts in the field of general and transplant nephrology[.]"

56.    In addition, Dr. Bonventre wrote that Dr. Hod was on track to be invited to join the faculty in July 2017, and that "the loss of her services would severely hinder the future and success of the transplant program."

*57.*    Dr. Bonventre also represented in the letter that Dr. Hod was "directly funded" by BWH.

58.    Further, on or about September 8, 2017, Dr. Tucker ranked Dr. Hod as "superior" in categories such as "professional judgment," "character and ethics," and "relationships with patients" on an Evaluation Form for the Board of Registration in Medicine.

*Partners Persist in Its Attempts to Obtain a "Donation" from Dr. Hod, but Dr. Hod Refuses*

9

59.     As Dr. Hod's first year came to a close, Partners again sought to impose conditions on her employment that were not imposed on other fellows in the program.

60.     Beginning on or around April 27, 2016, Dr. Chandraker sought to arrange for Dr. Hod to perform her second year of the fellowship research at Tufts Medical Center ("Tufts").

61.     The reason that Dr. Chandraker sought this arrangement was so that Partners would not have to fund Dr. Hod's position, as Partners could not avail itself of the training grant since Dr. Hod did not yet have her Green Card.

62.     Even though Partners was funding the other fellows in the program, whether by training grant or otherwise, they did not want to fund Dr. Hod's position.  To that end, Dr. Chandraker attempted (again) to have Dr. Hod fund her own position by way of a "donation" from her husband's company.

63.     Dr. Chandraker further proposed transferring Dr. Hod to Tufts, even though Dr. Hod wanted to remain at BWH like the other fellows.  Partners did not seek to impose this unusual arrangement on any other fellow in the program.

64.     Dr. Chandraker pressured Dr. Hod to provide a "donation" to BWH despite his knowledge that such funding is at odds with the rules applicable to Dr. Hod's immigration status and her immigration situation, as well as certain aspects of BWH's and MGH's funding and legal statuses.

65.     Among other things, Dr. Chandraker told Dr. Hod that there was no possibility that Dr. Bonventre would allow Dr. Hod to have a long-term arrangement with BWH without the donation, even though Dr. Bonventre represented to the United States Department of Health and Human Services that Dr. Hod was "on track to be invited to join the faculty . . . in July 2017."

66.     Dr. Hod refused to submit to Partners' demands and oblique threats, and she informed Dr. Chandraker that her position must be funded by Partners, like all the other fellows in the program.

67.     Dr. Chandraker, acting as an agent of Partners, nevertheless continued to pressure Dr. Hod into providing the improper funding, insinuating that she cannot otherwise stay at BWH on a long-term basis.

68.     On May 13, 2016, Dr. Hod met with Dr. Bonventre to explain why her husband's company could not properly finance her position, apprising him of the legal implications associated with the requested "donation."

69.     Dr. Bonventre was personally dismayed upon learning that Dr. Hod's husband's company would not be financing Dr. Hod's position.

70.     Dr. Bonventre tried to persuade Dr. Hod that there was no impropriety with her funding her own position.  He told Dr. Hod that a connection between funding and employment is something that he has seen in his experience, including for multiple trainees.

71.     Dr. Hod reiterated that she cannot make the purported "donation" to BWH, as it was illegal and improper for her husband to subsidize her position.

72.     Dr. Bonventre told Dr. Hod that if she does not provide the self-funding, she would need to leave the program.

73.     Dr. Hod was severely distressed by the situation, as she was now being forced out of the program, because she appropriately refused to fund her own position.

74.     The self-funding was not part of the four-year contract that was in effect between Partners and Dr. Hod.

75.     For the reasons conveyed to Dr. Chandraker, Dr. Hod refused to accede to Dr. Bonventre's implied threats of termination.

*Partners Retaliates against Dr. Hod because She Voiced Her Concerns and Refused to Provide Improper Self-Funding*

76.     Dr. Hod started her second year in the Nephrology Fellowship on or around September 21, 2016.

77.     On September 16, 2016, Dr. Tucker requested to meet with Dr. Hod.  During their meeting, Dr. Tucker informed Dr. Hod for the first time that more than one attending physician allegedly mentioned that Dr. Hod can be difficult to communicate with.  Dr. Tucker explained that he never experienced any such issues working with Dr. Hod, personally, and that he was pleased with her work.  Dr. Tucker told Dr. Hod to work on addressing cultural barriers and adapting to BWH's system.

78.     On October 7, 2016, Dr. Tucker met with Dr. Hod and explained that fellows who are not Board-certified must remain with BWH because it would otherwise be virtually impossible to obtain a position elsewhere.  That is, all fellows at BWH who were not Board-certified remained employed at BWH, and Partners was well aware of this expectation.  Accordingly, Dr. Tucker told Dr. Hod that she should meet with Dr. Bonventre to discuss arrangements for the following year.

79.     Dr. Hod met with Dr. Bonventre on October 13, 2016.

80.     At their meeting on October 13th, Dr. Bonventre refused to support a grant that Dr. Hod intended to submit, which would have mitigated the situation.  This refusal was a direct response to Dr. Hod's refusal to provide the improper funding.

81.     Dr. Bonventre's refusal to support Dr. Hod's submission for a grant undermined Dr. Hod's research and frustrated the research contemplated in the offer letter, thereby interfering with her career.

82.     When Dr. Hod requested a letter of support, Dr. Bonventre refused on the basis that Dr. Hod would not be continuing her employment at BWH.  Dr. Bonventre did not raise *any* "issues" with Dr. Hod's performance.  Instead, Dr. Bonventre told Dr. Hod that the reason why she was being terminated from BWH is because she refused to provide the funding.  According to Dr. Bonventre, Dr. Hod could not stay at BWH, nor could she submit a grant application with BWH's support.

83.     Once it was apparent that Dr. Bonventre was seeking to tarnish Dr. Hod's career, Dr. Hod sought help from Ravi Tadhani, M.D. ("Dr. Tadhani"), Chief of MGH's Nephrology Division.

84.     On October 31, 2016, Dr. Hod met with Dr. Tadhani and explained that Dr. Bonventre was attempting to sully her career and reputation because her husband's company did not provide the improper subsidy.  She requested Dr. Tadhani's assistance in securing alternative employment within MGH in light of Dr. Bonventre informing her that she could not continue at BWH.

85.     Dr. Tadhani was astonished to hear about the improper *quid pro quo* and spoke with Dr. Bonventre.  Upon information and belief, when confronted with the situation and its impropriety, Dr. Bonventre told Dr. Tadhani that Dr. Hod could not continue at BWH due to "bad interactions" and performance issues.

86.     One day after Dr. Hod met with Dr. Tadhani, on November 1, 2016, Dr. Bonventre requested that Dr. Hod meet with him.  Dr. Bonventre began conjuring "issues" with Dr. Hod's performance.

87.     Dr. Bonventre told Dr. Hod for the first time of supposed "bad interactions" and performance issues – a pretext for Dr. Bonventre's resentment toward Dr. Hod for refusing to fund her own employment.  Dr. Bonventre claimed that Dr. Hod was having serious trouble communicating, among other issues that have been non-existent in Dr. Hod's twenty years' successful experience.

88.     These "bad interactions" and performance issues are absent from Dr. Hod's evaluations and employment file, and they did not allegedly arise until Dr. Tadhani confronted Dr. Bonventre about the improper self-funding that Dr. Hod brought to Dr. Tadhani's attention in October 2016.  To the degree that there are any issues that preexisted the need to backfill a reason for termination (besides the "donation"), they were minor, ordinary infelicities that happen with all employees, even high performers.

89.     Partners was required pursuant to Massachusetts Chapter 240 of the Acts of 2010, Section 148 to notify Dr. Hod within ten (10) days of the addition to her "personnel record" of any information that is being used has been used or may be used to negatively affect the employee's qualification for employment, promotion or transfer, additional compensation, or may subject the employee to disciplinary action.  Dr. Hod asked for and received a copy of her employment file on October 10, 2017.  The employment file was approximately seven pages and did not mention any performance issues and therefore the allegations of performance issues are part of a pretext that was not documented during the time in question.

90.     Dr. Bonventre sought to conceal the true reason why he sought to oust Dr. Hod from the program (*i.e.,* her refusal to provide the improper funding) by creating a letter dated January 5, 2017, purporting to memorialize his October 13th meeting with Dr. Hod.  This letter was not in Dr. Hod's statutorily-maintained employment file, it was not even presented or delivered to her in the ordinary course of business and she only recently became aware of its existence.

91.     Notably, Dr. Hod was repeatedly praised by others, despite the supposed "issues" with her performance.  Among other things, Dr. Tucker described Dr. Hod as a "stellar fellow."

92.     On June 2, 2017, Dr. Tucker also stated: "There is no doubt in my mind that Tammy is highly qualified for licensure in the Commonwealth."

*Partners Terminates Dr. Hod because She Refused to Provide a "Donation" to BWH*

93.     Dr. Hod expected to secure long-term employment at BWH after completing the four-year program.  Even though Dr. Bonventre stated that Dr. Hod was "on track" to join the faculty at BWH, he foreclosed that option upon learning that Dr. Hod would not provide the self-funding "donation."

94.     Accordingly, Dr. Hod was forced to spend the remainder of her second year engaging in extensive efforts to secure an alternative position.  While Dr. Hod preferred to remain at BWH for the already-committed four-year duration, Partners deprived her of any opportunity to do so.

95.     She had several interviews in Boston, including with Beth Israel Deaconess Medical Center, Boston University Medical Center, Tufts Medical Center, and St. Elizabeth's Medical Center.

96.     Dr. Hod's interviewers wanted to understand the situation at BWH, and why Dr. Hod could not remain employed at BWH (an extremely unusual situation for fellows who are not Board-certified).  Dr. Hod could not explain well why she could not stay employed at BWH, which hindered her ability to obtain similar employment under the circumstances.

97.     Partners continued to conjure "issues" with Dr. Hod's performance.  As August 2017 approached, Dr. Hod's performance "issues" apparently deepened and this occasioned an alleged need for "coaching."

98.     In or around the end of August 2017, Partners terminated Dr. Hod's employment with BWH.

99.     However, Dr. Bonventre's retaliatory conduct persisted.  On September 13, 2017, Dr. Bonventre told Dr. Hod, with Patricia Reaser present, that Dr. Hod lacked interpersonal skills such that she would need months of intensive coaching, at her expense, to correct for her abject lack of self-awareness.  Dr. Bonventre indicated that only then might Dr. Hod be considered to be hired for, at most, 10% of a full-time position.

100.    Dr. Hod has not been able to obtain comparable employment as a trained physician following Partners' discrimination and Partners' and Dr. Bonventre's retaliation, despite her efforts to do so.  The reality is that without Board certification, Dr. Hod had limited options for securing comparable employment.  Moreover, the reputational harm caused by Partners forcing Dr. Hod out of the Nephrology Fellowship and BWH made it nearly impossible for Dr. Hod to find employment even within the few opportunities that she had without the Board certification that would have resulted from the terminated association.  That is why there is an expectation that fellows who were not Board-certified will remain employed on a long-term

16

basis, as Dr. Bonventre had previously represented would be the case in his letter of support to the United States Department of Health and Human Services.

101.    Partners' termination of Dr. Hod left her without any ability to obtain comparable employment anywhere in the Commonwealth of Massachusetts, in light of the damage to her reputation and the certification requirements.  Accordingly, Dr. Hod has needed to expand her job search out of the Commonwealth of Massachusetts into other states, such as New York.

102.    For example, on May 8, 2018, Dr. Hod met with John Cijiang He, M.D., Ph.D. ("Dr. Cijiang"), a professor and medical doctor at Icahn School of Medicine at Mount Sinai, to interview for a position in his Nephrology Department.

103.    The interview went well and Dr. Hod sent an e-mail to Dr. Cijiang on the following day thanking him for his time and requesting information on next steps in the hiring process.

104.    When Dr. Cijiang did not respond, Dr. Hod sent him a follow-on e-mail on May 15, 2018.

105.    Dr. Cijiang responded to Dr. Hod's e-mail by stating, in pertinent part: "After discussing with faculty who interviewed you and obtaining some other feedback from related people we feel that you might not be fitted to the faculty position that we are looking for."

106.    Partners' discrimination and Partners' and Dr. Bonventre's retaliation against Dr. Hod has caused her severe emotional distress.  To date, Dr. Hod has not been able to secure suitable employment in the United States, despite her efforts.  Moreover, in light of the reputational harm that Dr. Hod has suffered as a consequence of Partners' acts and omissions, Dr. Hod has been forced to return to Israel with her entire family in order to be employed.

17

## CLAIMS

## COUNT I – BREACH OF CONTRACT

### (against BWH, MGH, and Partners Healthcare)

107.     Plaintiff incorporates the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

108.     On April 13, 2015, Partners offered Dr. Hod a position in their Nephrology Fellowship.

109.     The offer letter is unambiguous, and it states that the position is a four-year position.

110.     Dr. Hod promptly accepted Partners' offer for a four-year position in the Nephrology Fellowship.  The four-year position is structured within one year of clinical training, with second year clinical obligations, and thirty-six months of research training.  The first two years are accredited by the ACGME and the third and fourth years are not.

111.     In connection with the fellowship, Dr. Hod agreed to provided teaching, research, and other services as an employee, in exchange for a salary.

112.     Dr. Hod performed all of her obligations pursuant to the agreement.

113.     Dr. Hod accepted the fellowship to the exclusion of other opportunities.

114.     Nowhere in the offer letter does it purport to require self-funding.

115.     Partners terminated Dr. Hod's position after two years because she refused to provide the "donation" to BWH, which Dr. Hod was not contractually obligated to provide and which Partners had no proper basis to demand.

116.     Accordingly, Partners breached the contract.

117.     Due to Partners' actions in breaching the agreement, Dr. Hod has suffered a substantial loss of wages and other benefits.

118.     Plaintiff is entitled to recover damages from Partners, including loss of wages and other benefits, and consequential damages, among other damages in an amount to be determined at trial.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (against BWH, MGH, and Partners Healthcare)

119.     Plaintiff incorporates the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

120.     Implied in every Massachusetts contract is a covenant of good faith and fair dealing.

121.     By entering into a four-year contract with Dr. Hod, Partners were obligated to perform their duties in good faith and avoid frustrating Dr. Hod's receipt of the benefit of the bargain.

122.     Partners knew that they were required to fund Dr. Hod's position for the third and fourth years.

123.     Despite having these obligations, Partners immediately signaled their unwillingness to fund certain years within the program, and instead insisted that Dr. Hod provide or otherwise find self-funding.

124.     Dr. Hod attempted to find self-funding though, for example, a grant.

125.     Partners refused to support Dr. Hod's application for a grant.

126.     Meanwhile, Partners still required Dr. Hod provide self-funding and told Dr. Hod that she would have to have her husband fund a "donation."

127.     Accordingly, Partners frustrated Dr. Hod's ability to continue in the four-year program, thereby breaching the covenant of good faith and fair dealing.

128.     As a result of Partners' breach of the covenant of good faith and fair dealing, Dr. Hod has suffered damages in an amount to be determined at trial.

## COUNT III – NATIONAL ORIGIN DISCRIMINATION

### Violation of M.G.L. c. 151B (against BWH, MGH, and Partners Healthcare)

129.     Plaintiff incorporates the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

130.     Dr. Hod was born in Israel, and she lived there before immigrating to the United States.

131.     Partners refused to allow Dr. Hod to continue her position in the Nephrology Fellowship unless she provided self-funding.

132.     Upon information and belief, this condition was not applied to any other fellow employed in the Nephrology Fellowship, including international or native-born American fellows.

133.     Partners imposed these conditions on Dr. Hod's employment based on her immigration status, thereby discriminating against Dr. Hod.

134.     Dr. Hod experienced disparate treatment in material aspects of her employment as a result of her national origin.

135.     Dr. Hod has exhausted her administrative remedies.

136.     Dr. Hod has suffered damages in an amount to be determined at trial.

## COUNT IV – NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII

### (against BWH, MGH, and Partners Healthcare)

137.     Plaintiff incorporates the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

138.     Dr. Hod was born in Israel, and she lived there before immigrating to the United States.

139.     Partners refused to allow Dr. Hod to continue her position in the Nephrology Fellowship unless she provided self-funding.

140.     Upon information and belief, this condition was not applied to any other fellow employed in the Nephrology Fellowship, including international or native-born American fellows.

141.     Partners imposed these conditions on Dr. Hod's employment based on her immigration status, thereby discriminating against Dr. Hod.

142.     Dr. Hod experienced disparate treatment in material aspects of her employment as a result of her national origin.

143.     Dr. Hod has exhausted her administrative remedies.

144.     Dr. Hod has suffered damages in an amount to be determined at trial.

### COUNT V – RETALIATION

### (against BWH, MGH, Partners Healthcare and Dr. Bonventre)

145.     Plaintiff incorporates the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

146.     Dr. Hod was born in Israel, and she lived there before immigrating to the United States.

21

147.    Partners' refused to allow Dr. Hod to continue her position in the Nephrology Fellowship unless she provided self-funding.

148.    Upon information and belief, this condition was not applied to any other fellow employed in the Nephrology Fellowship.

149.    Partners nevertheless persisted in seeking funding from Dr. Hod's husband's company, purporting to characterize the funding as a "donation" to BWH.

150.    Neither Dr. Hod nor her husband provided the "donation."

151.    Dr. Hod refused to provide the "donation" to BWH because the rules applicable to Dr. Hod's immigration status and her immigration situation prohibited such self-funding and because it was not mentioned or agreed at the outset and was adverse to Dr. Hod's dignity as a professional.

152.    Dr. Hod suffered adverse employment actions as a result of her refusal to supply a "donation" to BWH in order to keep her fellowship.

153.    Specifically, following Dr. Hod's refusal to supply the "donation," Dr. Bonventre, at all times acting as an agent of Partners, began to purport to cite Dr. Hod for alleged performance or other interpersonal issues.

154.    Dr. Bonventre began purporting to identify alleged "issues" with Dr. Hod's performance despite praising from others, including Dr. Tucker describing her performance as "stellar" and other superlative adjectives.

155.    As a result of the refusal to provide a donation, Dr. Hod was terminated on or around August 2017.

156.    To the extent that Dr. Hod's termination could be characterized as a decision not to renew her fellowship, the decision not to renew the fellowship was retaliatory for the same reasons described herein.

157.    Partners had no other *bona fide* or non-discriminatory reason to terminate Dr. Hod or decline to renew her fellowship.

158.     As a result of this retaliation, Dr. Hod has suffered damages in an amount to be determined at trial.

## COUNT VI – RETALIATION UNDER TITLE VII

### (against BWH, MGH, Partners Healthcare and Dr. Bonventre)

159.    Plaintiff incorporates the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

160.    Dr. Hod was born in Israel, and she lived there before immigrating to the United States.

161.    Partners' refused to allow Dr. Hod to continue her position in the Nephrology Fellowship unless she provided self-funding.

162.    Upon information and belief, this condition was not applied to any other fellow employed in the Nephrology Fellowship.

163.    Partners nevertheless persisted in seeking funding from Dr. Hod's husband's company, purporting to characterize the funding as a "donation" to BWH.

164.    Neither Dr. Hod nor her husband provided the "donation."

165.    Dr. Hod refused to provide the "donation" to BWH because the rules applicable to Dr. Hod's immigration status and her immigration situation prohibited such self-funding and

because it was not mentioned or agreed at the outset and was adverse to Dr. Hod's dignity as a professional.

166.    Dr. Hod suffered adverse employment actions as a result of her refusal to supply a "donation" to BWH in order to keep her fellowship.

167.    Specifically, following Dr. Hod's refusal to supply the "donation," Dr. Bonventre, at all times acting as an agent of Partners, began to purport to cite Dr. Hod for alleged performance or other interpersonal issues.

168.    Dr. Bonventre began purporting to identify alleged "issues" with Dr. Hod's performance despite praising from others, including Dr. Tucker describing her performance as "stellar" and other superlative adjectives.

169.    As a result of the refusal to provide a donation, Dr. Hod was terminated on or around August 2017.

170.    To the extent that Dr. Hod's termination could be characterized as a decision not to renew her fellowship, the decision not to renew the fellowship was retaliatory for the same reasons described herein.

171.    Partners had no other *bona fide* or non-discriminatory reason to terminate Dr. Hod or decline to renew her fellowship.

172.    As a result of this retaliation, Dr. Hod has suffered damages in an amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant her the following relief:

1.    That judgment be entered for Plaintiff on her claims pleaded in this Complaint;

2.      That Plaintiff be awarded all damages, including lost wages and benefits; interest;

costs; attorneys' fees; and consequential, exemplary, and punitive damages;

3.      That Plaintiff be awarded additional damages in the amount of any applicable

taxes that may be withheld by BWH and MGH or Partners on any award of back pay or front

pay;

4.      That the Court conclude that no Defendant is entitled to application of the cap on

liability for charitable organizations as set forth under M.G.L. c. 231 § 85K; and

5.      That the Court grant Plaintiff such other and further relief as it considers just,

proper, and equitable under the circumstances.


Respectfully Submitted,

**TAMAR HOD, M.D.**

By her attorneys,

Colin R. Hagan, (BBO No. 684798)
David J. Shlansky, (BBO No. 565321)
SHLANSKY LAW GROUP, LLP
1 Winnisimmet Street
Chelsea, MA 02150
Phone: (617) 497-7200
Fax:    (866) 257-9530
E-mail: Colin.Hagan@slglawfirm.com
        David.Shlansky@slglawfirm.com

Dated: January 21, 2019                  *Counsel for Plainitff Tamar Hod*

25

## **EXHIBIT A**

Offer of Fellowship, dated April 13, 2015

*Please see attached.*

**BWH**
# BRIGHAM AND
# WOMEN'S HOSPITAL

**MGH** 1811
# MASSACHUSETTS
# GENERAL HOSPITAL

## Brigham and Women's Hospital/Massachusetts General Hospital
## Joint Nephrology Fellowship Program

**J. Kevin Tucker, MD**
*Program Director*

**Joseph V. Bonventre, MD, PhD**
*Chief, Division of Renal Medicine*
*Brigham and Women's Hospital*

**Ravi Thadhani, MD, MPH**
*Chief, Nephrology Division*
*Massachusetts General Hospital*

April 13, 2015

Tamar Hod
Hadganit 4, Ramat Hasharon

Dear Dr. Hod:

The Fellowship Selection Committee of the Joint Program in Nephrology at Brigham and Women's Hospital and Massachusetts General Hospital is very pleased to offer you a position within our program, beginning August 1, 2015. This appointment is contingent upon successful completion of an ACGME-accredited internal medicine training program, licensing by the Commonwealth of Massachusetts, and credentialing by Brigham and Women's Hospital.

The program is structured within four years as twelve months of primarily clinical training and thirty- six months of primarily research training. The second year, however, will include clinical responsibilities to be determined at the discretion of the Program Director. The first two years are accredited by the ACGME. The third and fourth years are not accredited by the ACGME and will focus on research but will include clinical experiences in order to optimize your clinical training.

Please be assured that we will do all we can to make your experience with us as rewarding and productive as possible. Please confirm your acceptance of this appointment in writing as soon as possible.

Congratulations and best wishes.

Sincerely yours,

J. Kevin Tucker, M.D.
Program Director
Joint Nephrology Training Program

Joseph V. Bonventre, MD, PhD
Director, Renal Division
Brigham and Women's Hospital

Ravi Thadhani, MD, MPH
Chief, Renal Unit
Massachusetts General Hospital

Renal Division
Brigham and Women's Hospital
75 Francis Street, MRB4
Boston, MA 02115

A FOUNDING MEMBER OF  PARTNERS. HEALTHCARE

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1984CV00242 E | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Tamar Hod, M.D. vs. Brigham and Women's Hospital Inc et al | Michael Joseph Donovan, Clerk of Court |
|---|---|

| TO: , | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |
|---|---|

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                        DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 04/24/2019 |  |
| Response to the complaint filed (also see MRCP 12) |  | 05/24/2019 |  |
| All motions under MRCP 12, 19, and 20 | 05/24/2019 | 06/24/2019 | 07/23/2019 |
| All motions under MRCP 15 | 05/24/2019 | 06/24/2019 | 07/23/2019 |
| All discovery requests **and depositions** served and non-expert depositions completed | 11/20/2019 |  |  |
| All motions under MRCP 56 | 12/20/2019 | 01/21/2020 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 05/18/2020 |
| Case shall be resolved and judgment shall issue by |  |  | 01/25/2021 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 01/24/2019 | ASSISTANT CLERK Margaret M Buckley | PHONE (617)788-8144 |
|---|---|---|

Date/Time Printed: 01-24-2019 14:42:34

SCV026\ 08/2018